**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 16-cv-60956-GAYLES**

**ARTHUR J. GOLDSTEIN,**
                         **Plaintiff,**

            **v.**

**GFS MARKET REALTY FOUR, LLC, and**
**GFS STORES, LLC,**
                         **Defendants.**
_____ /

## ORDER

**THIS CAUSE** comes before the Court on Plaintiff Arthur J. Goldstein's Motion to Remand [ECF No. 10]. The Defendants, GFS Market Realty Four, LLC, and GFS Stores, LLC, removed this action, pursuant to 28 U.S.C. § 1441, from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to this Court on May 2, 2016 [ECF No. 1] ("Notice").[1] Goldstein now seeks to remand the action back to state court, arguing that the Defendants' notice of removal was untimely and that the Defendants waived their right to removal through offensive or defensive actions taken in state court. The Court has reviewed the briefing, the record in this case, and the applicable law, and is otherwise fully advised in the premises. For the reasons that follow, the motion to remand shall be denied.

## I.      BACKGROUND

This lawsuit arises from an October 17, 2011, incident at a Gordon Food Services ("GFS") supermarket store owned and operated by the Defendants in Fort Lauderdale, Florida, in which the Plaintiff, Arthur Goldstein, slipped on a wet ramp as he exited the store and injured himself.

---

[1]   The Defendants later filed an Amended Notice of Removal on June 10, 2016 [ECF No. 19] ("Am. Notice"), in response to this Court's Order to Show Cause issued on June 9, 2016 [ECF No. 18].

Pl.'s Mot. at 1. On October 3, 2013, Goldstein, through his counsel, mailed a demand letter to GFS's insurance provider. The letter contained a description of the accident and the injury, included copies of Goldstein's then-available medical records and medical bills (which totaled over $14,000), and included a demand for $250,000 as settlement of his claims. *See id.*; *see also* Pl.'s Mot. Ex. 1. On March 10, 2015, Goldstein, again through counsel, sent a Civil Remedy Notice and an Operative Report to the insurance provider, notifying it that he had undergone a bilateral decompression laminectomy with foraminotomy, informing them that he may have over $50,000 in medical bills, and demanding $500,000 as settlement. Pl.'s Mot. at 2; *see also* Pl.'s Mot. Ex. 2. Subsequently, Goldstein sent at least one supplement to that Civil Remedy Notice to the insurance provider, along with additional medical bills and reports. Pl.'s Mot. at 2; *see also* Pl.'s Mot. Ex. 3.

Goldstein commenced the instant lawsuit on May 19, 2015, by filing a complaint against Gordon Food Service, LLC, in the Seventeenth Judicial Circuit Court. [ECF No. 11-5] ("Compl."). He later amended that complaint twice: first, by adding Defendant GFS Stores, LLC, on June 17, 2015, and, second, by removing Gordon Food Service, LLC, and adding Defendant GFS Marketplace Realty Four, LLC, on August 28, 2015. *See* [ECF No. 11-4] ("First Am. Compl."); [ECF No. 1-1] ("Second Am. Compl."). In each of the Complaint's three iterations, Goldstein alleged that the action was for damages in excess of $15,000, as required under Florida law. *See* Compl.; First Am. Compl.; Second Am. Compl. On July 23, 2015, the Defendants served Goldstein with a set of interrogatories requesting details about his damages. Defs.' Opp'n at 6. In September 2015, Goldstein responded:

- "I do not know the exact amount of my Medical bills, prescriptions, or what I owe. Attached is what I do know: Please see . . . attachment [October 3, 2013, demand letter];

- "Also, Holy Cross bill for $4,800.04 (remains unpaid); Orthopedic Center bill for $9,308.00 (I believe this is the balance of what is unpaid), all other bills are

unknown at this time. However, I believe I have over $54,000.00 in Medical Bills"; and

- "I am not claiming lost wages."

[ECF No. 12-1] ("Ross Decl.") Ex. 5 ¶¶ 11-12.[2] To support that "over $54,000" assertion, Goldstein attached a list of bills totaling $39,891.55; this amount, plus the unpaid Holy Cross and Orthopedic Center bills brought the total owed in medical bills at that time to $53,999.69. [ECF No. 13] ("Wolfe Decl.") ¶ 29; *see also* Wolfe Decl. Ex. 4. The Defendants later served Goldstein with a request for production of documents seeking copies of his medical records and other documents to substantiate the amount of monetary compensation he seeks from the Defendants; Goldstein, however, did not produce new information. Ross Decl. ¶ 26.

Counsel for both parties met in late 2015 to discuss the lack of medical records and other information the Defendants contended were needed to evaluate Goldstein's claim. *Id.* ¶¶ 27-29. Given this dearth of information, and Goldstein's inability to produce it himself, Goldstein's counsel agreed to not object to Defendants' counsel seeking the relevant medical record information via third-party subpoenas. *Id.* ¶ 29. After receiving and evaluating the documentation produced pursuant to these subpoenas in April 2016, the Defendants concluded that the amount in controversy "could reasonably and justifiably exceed $75,000." *Id.* ¶¶ 31-33. The Defendants then filed a Notice of Removal on May 2, 2016.

Goldstein filed the instant motion to remand two days later. In it, he raises two arguments: first, that the Defendants waived their right to remove the case to federal court based on their participation in litigation in state court; and second, that the Defendants' Notice of Removal was

---

[2]    "[A] defendant *may* add post-removal evidence of jurisdiction to the record when that evidence is otherwise admissible." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 773 (11th Cir. 2010) (emphasis in original) (citing *Willingham v. Morgan*, 395 U.S. 402, 408 n.3 (1969) ("This material should have appeared in the petition for removal. However, for purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits."); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002) ("The district court did not err in construing [the defendant's] opposition [to remand] as an amendment to its notice of removal.")). Therefore, this Court appropriately considers Defense counsel's declaration and attached exhibits in its analysis, as they are otherwise admissible and relevant to the pre-removal time period.

untimely. *See* Pl.'s Mot. at 3-7.

## II.    SUBJECT MATTER JURISDICTION

Given the issues presented by the motion to remand and the record in this case, especially those relating to satisfaction of the amount-in-controversy requirement of diversity jurisdiction, the Court takes seriously its "independent obligation to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *see also Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[A] court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings. Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.").

The statute governing removal, 28 U.S.C. § 1441, permits a defendant to remove a civil case filed in state court to federal court if the federal court has federal question jurisdiction under 28 U.S.C. § 1331 (which is not at issue here, as Goldstein asserts only claims arising under Florida law) or diversity jurisdiction under 28 U.S.C. § 1332. Diversity jurisdiction requires fully diverse citizenship of the parties and an amount in controversy over $75,000, assessed at the time of removal. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n.12 (11th Cir. 2009); *see also* 28 U.S.C. § 1332(a). A defendant who seeks to remove a case to federal court must timely file in the federal court a notice of removal and "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

### A.    *Diversity of Citizenship*

It is undisputed that Goldstein is a citizen of Florida. Am. Notice at 2; Second Am. Compl. ¶ 2. As for the Defendants, their original Notice of Removal stated only that GFS Market Realty Four, LLC, and GFS Stores, LLC, "are limited liability companies established and existing under the laws of the State of Delaware." Notice at 2. However, it is well-established in this Circuit that

4

"a limited liability company is a citizen of any state of which a member of the company is a citizen," *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004), so "to sufficiently allege the citizenships of unincorporated business entities, the removing party must list the citizenships of all members of the limited liability company," *S. Beach Grp. Hotels, Inc. v. James River Ins. Co.*, No. 16-23265, 2016 WL 4157422, at *2 (S.D. Fla. Aug. 5, 2016) (citation omitted). The Defendants did not originally allege these citizenships, so the Court issued an Order to Show Cause, allowing the Defendants to file an Amended Notice of Removal to cure the jurisdictional deficiency in the allegations [ECF No. 18], which the Defendants did on June 10, 2016. *See* Am. Notice. According to this Amended Notice, Defendant GFS Market Realty Four, LLC, is a single-member Delaware limited liability company whose sole member is Pinnacle Real Estate, Inc., a Delaware corporation with its principal place of business in Michigan, and Defendant GFS Stores, LLC, is also a single-member Delaware limited liability company whose sole member is Gordon Food Service, Inc., a Michigan corporation with its principal place of business in Michigan. *Id.* at 3. Based on this showing, the Court concludes that diversity of citizenship between the parties has been sufficiently established.

> **B.**     ***Amount in Controversy***

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and need not contain evidentiary submissions unless the plaintiff contests the defendant's allegation of jurisdiction or the court questions it. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). Here, in accordance with Florida law, Goldstein alleged in the Second Amended Complaint (and its earlier iterations) only that the amount in controversy was in excess of $15,000. To support their claim that this action exceeds the jurisdictional threshold, the Defendants, in their Amended Notice of Removal, allege that Goldstein's fall caused him to suffer "neuromuscular injuries that are permanent and which

require extended and expensive medical care." Am. Notice ¶ 10. They further state that they have, over the course of discovery, "obtained copies of Plaintiff's medical records, records which reflect that he has undergone [a] series of medical treatments (including surgery) whose cost[s] far exceed the jurisdictional limits of this Court." *Id.* ¶ 11. Moreover, they "recently confirmed the amount of such treatments and surgery, in addition to the fact that Plaintiff seeks to recover monetary compensation from the Defendants that far exceeds the jurisdictional limits of this Court." *Id.*[3]

Following the rule in *Dart Cherokee*, this Court finds that the Amended Notice of Removal plausibly alleges that the amount in controversy exceeds the jurisdictional threshold. Given that Goldstein has not challenged the Defendants' allegation to that effect[4] and that the Court does not question it, more from the Defendants—in the form of either more detailed factual allegations or evidentiary submissions—is not required. *See Dart Cherokee*, 135 S. Ct. at 554. Accordingly, the Court concludes that the Amended Notice of Removal establishes the satisfaction of the amount in controversy and, therefore, the existence of diversity jurisdiction.

## III.    PROPRIETY OF REMAND

The procedure for a motion to remand is governed by 28 U.S.C. § 1447(c). If a plaintiff seeks to remand the case on the basis of any defect other than a lack of subject matter jurisdiction (which, of course, may be raised at any time), he must file a motion within thirty days after the

---

[3]   Goldstein does not challenge the Defendants' allegation that the amount in controversy has been satisfied (in fact, Goldstein maintains that the amount in controversy has always been over $75,000—his arguments pertaining to that belief will be addressed *infra*). That said, subject matter jurisdiction "cannot be created by the consent of the parties, nor supplanted by considerations of convenience and efficiency." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000) (citation omitted); *see also, e.g., Eckert v. Sears, Roebuck & Co.*, No. 13-2599, 2013 WL 5673511, at *1 (M.D. Fla. Oct. 17, 2013) ("Allowing the parties to invoke jurisdiction by merely claiming in concert that the amount-in-controversy exceeds the jurisdictional requirement is 'tantamount to allowing the parties to consent to removal jurisdiction.'" (quoting 14AA Charles A. Wright et al., *Federal Practice and Procedure* § 3702.1 (4th ed. 2013)).

[4]   Although Goldstein's motion on several occasions states that this Court "lacks subject matter jurisdiction over this lawsuit," *see, e.g.*, Pl.' Mot. at 3, he seems to misunderstand that the objections he raises are, in actuality, ***procedural defects***, rather than defects in subject matter jurisdiction. Goldstein does not contend that the parties are not diverse, nor that the amount in controversy has not been satisfied.

filing of the notice of removal.[5] And "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). A district court considering a motion to remand "has before it only the limited universe of evidence available when the motion to remand is filed—i.e., the notice of removal and accompanying documents." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1213-14 (11th Cir. 2007) (footnote omitted). If that evidence is insufficient to establish removal, "neither the defendants nor the court may speculate in an attempt to make up for the notice's filings." *Id.* at 1214-15. However, "the district court when necessary [may] consider post-removal evidence in assessing removal jurisdiction." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 773 (11th Cir. 2010) (quoting *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000)). The Court is required to construe the removal statutes narrowly and resolve any doubt against removal, *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996), but it must be "equally vigilant" in protecting a defendant's right to proceed in federal court as it is in permitting a state court to retain its jurisdiction, *Pretka*, 608 F.3d at 766.

### A.   *Timeliness of Removal*

Goldstein contends that that this case should be remanded because the Defendants' notice of removal is untimely under 28 U.S.C. § 1446(b). Section 1446(b) contains two primary subsections governing removal timing. The Court addresses the arguments under each subsection in turn.

### 1.   Whether the Case Was Initially Removable: Section 1446(b)(1)

Section 1446(b)(1) governs when a case is removable at the outset:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceed-

---

[5]   Goldstein filed an Amended Motion to Remand on June 23, 2016 [ECF No. 22], in which he raises the same substantive legal arguments as he did in the original motion, *i.e.*, removal was untimely and the Defendants waived the right to remove. Because the Amended Motion was filed well outside the thirty-day time period provided in Section 1447(c), the Court is permitted to consider it if (and only if) it asserts a lack of subject matter jurisdiction. But given that both of Goldstein's arguments allege defects in the Defendants' removal, *not* a lack of subject matter jurisdiction, the Amended Motion is untimely. As such, the Court shall consider only the initial Motion.

ing is based, or within 30 days after the service of the summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1). The initial pleading in this action stated only that the amount in controversy exceeded $15,000, which does not itself make the action removable. Nevertheless, Goldstein advances two arguments that this case was removable at the time the Complaint was filed.

### a.   *Pre-Suit Demands*

First, Goldstein contends that the case was "immediately removable" because the Defendants received a pre-suit demand for $250,000, a Civil Remedy Notice and supplements totaling $500,000, and some of Goldstein's medical bills and records. Pl.'s Mot. at 5. Based on this, he argues that the Defendants should have known that the amount in controversy was greater than $75,000.

Goldstein's argument fails because the ***pre-suit*** demand, notice, bills, and records cannot be considered as part of his "initial pleading" under Section 1446(b)(1). The plain language of the removal statute requires that "if an 'other paper,'" such as these documents, "is to start the thirty-day time period, a defendant must receive the 'other paper' ***after*** receiving the initial pleading." *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 164 (5th Cir. 1992) (emphasis added); *accord Bender v. Mazda Corp.*, 657 F.3d 1200, 1204 n.2 (11th Cir. 2011) ("[T]his case is based on the [third subsection] of 28 U.S.C. § 1446(b) which deals with cases that are not removable from the initial pleading, but become removable at a later date through 'a copy of an amended pleading, motion, order, or other paper.'" (citation omitted) (quoting 28 U.S.C. § 1446(b))); *Lowery*, 483 F.3d at 1213 ("[U]nder § 1446(b), in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff—be it the initial complaint or ***a later received paper*** . . . ." (emphasis added)). As a court in the Middle District of Florida explained in *Village Square Condominium of Orlando, Inc. v. Nationwide Mutual Fire Insurance Co.*:

> [T]he policies regarding removal counsel against adopting a rule that would impute knowledge of pre-suit documents to defendants. Congress has made clear its intent that defendants must be circumspect in deciding whether to remove a case. 28 U.S.C. § 1447(c) (permitting courts to require defendants to pay costs and attorneys' fees when granting motions to remand). As other courts have recognized, if pre-suit documents were allowed to trigger the thirty-day limitation in 28 U.S.C. § 1446(b), defendants would be forced to "'guess' as to an action's removability, thus encouraging premature, and often unwarranted, removal requests."

No. 09-1711, 2009 WL 4855700, at \*4 (M.D. Fla. Dec. 10, 2009) (quoting *Mendez v. Cent. Garden & Pet Co.*, 307 F. Supp. 2d 1215, 1221 (M.D. Ala. 2003)).

The Court agrees with the *Village Square* court's reasoning and concludes that none of Goldstein's pre-suit documents—the settlement demand, the Civil Remedy Notice, or the attached documents—started the running of the thirty-day time period for removal provided in Section 1446(b)(1). The Court, therefore, cannot consider these documents in determining whether this action was immediately removable.

### b.     *Allegations Contained in the Complaint*

Second, Goldstein posits that the Defendants "knew about the diversity jurisdiction well before they removed this case" because Goldstein's statements in the Complaint and its amendments regarding the injuries he suffered should have, in effect, put the Defendants on notice that the amount in controversy would be greater than $75,000. Pl.'s Reply at 6. The initial Complaint provides as follows:

> As a result of the actions or inactions of the Defendant . . . , Plaintiff, GOLDSTEIN, was injured in and about his body and extremities suffering bodily injury resulting pain and suffering, disability, aggravation of a pre-existing condition, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense and hospitalization, medical care and nursing care and treatment, physical handicap, loss of insurability, will require rehabilitative expenses, loss of ability to earn money, had services performed for him as a result of the injuries by persons who otherwise would not have to perform such services, inconvenience, and the injuries and losses are permanent or non-permanent, and the Plaintiff, GOLDSTEIN, will continue to suffer losses and impairment in the future, earnings, loss of ability to earn money and an aggravation of a previously existing condition. The losses are either permanent or continuing in nature and the Plaintiff, GOLDSTEIN, will suffer the

losses in the future.

Compl. ¶ 15. Citing *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1060 (11th Cir. 2010),

Goldstein urges the Court to use "[j]udicial experience, taking all sufficient facts into account, and

common sense" to determine that his allegations sufficed to exceed the jurisdictional amount at

the time the lawsuit was initially filed. Pl.'s Reply at 6.

The Court is unpersuaded that *Roe* compels a finding that the initial Complaint necessarily

established that the value of Goldstein's claims exceeded the jurisdictional amount. Granted, the

Eleventh Circuit in *Roe **did*** recognize that "judicial experience and common sense" may support

"reasonable inferences" drawn "from the pleadings" to determine whether "the case stated in [the]

complaint meets federal jurisdictional requirements." 613 F.3d at 1061. But "nothing in *Roe* permits

[a] court to indulge in speculation or fill empty gaps in a plaintiff's factual averments with un-

founded assumptions about what the evidence may show." *Perkins v. Merion Realty Servs., LLC*,

No. 14-1171, 2015 WL 998198, at *3 (M.D. Ala. Mar. 6, 2015). Indeed, Goldstein's assertion that

this Court "should consider the nature of the allegations in the complaint in assessing the potential

outcome of the litigation boils down to little more than an invitation for the court to use its 'judicial

experience and common sense' to divine" an amount of damages in excess of $75,000. *Simpson

v. Primerica Life Ins. Co.*, No. 15-0777, 2015 WL 9315658, at *6 (M.D. Ala. Dec. 3, 2015).

"[W]ithout facts or specific allegations," the amount in controversy, as stated in the Com-

plaint, can be determined "only through speculation—and that is impermissible." *Pretka*, 608 F.3d

at 753-54. There are no allegations regarding the severity of the injuries that could have formed

the basis of a reasonable deduction, inference, or extrapolation by this Court. Instead, Goldstein

alleged a "generic scattershot list of unspecified damages." *Robinson v. Peck*, No. 14-1628, 2014

WL 5857235, at *4 (N.D. Ga. Nov. 12, 2014).[6] A finding that the value of Goldstein's claim exceeded $75,000 from the outset, based only on his sparse, conclusory, and inexact allegations, would be the result of "unabashed guesswork," *Lowery*, 483 F.3d at 1211,[7] and could open the door to a flood of improper removals from defendants in future suits, filed out of fear of the loss of their statutory right to be heard in federal court.[8] The Court will not engage in such speculation and, consequently, finds that the allegations in the Complaint did not render this case removable at the outset under Section 1446(b)(1).

### 2.       Whether the Case Later Became Removable: Section 1446(b)(3)

Given the Court's conclusion that this action was not initially removable, the Court must now determine whether the action later became removable. Section 1446(b)(3) governs if the action "stated by the initial pleading is not removable," in which case

> a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or

---

[6]   In *Robinson*, also a slip-and-fall case, the court found that the amount in controversy was not satisfied where the plaintiff alleged in his complaint that he "suffered immediate, continuing, and permanent injuries, which cause[d] extreme and disabling pain," and listed personal injuries, pain and suffering, mental anguish, loss of the capacity for the full enjoyment of life, impaired ability to labor, loss of earning capacity, incidental expenses, expenses for seeking medical treatment, future medical expenses, and permanent injury. 2014 WL 5857235, at *4. Integral to the court's finding was the fact that the plaintiff, like Goldstein here, "d[id] not allege the nature of his injury, the body part or parts affected, the recovery period required, the method of treatment received, the cost of past treatment, or the projected cost of future treatment." *Id.*

[7]   The Court recognizes that *Lowery* is not controlling precedent as to Section 1446(b)(1) removal. *See Pretka*, 608 F.3d at 737 ("While some of the language of [*Lowery*] sweeps more broadly, it is dicta insofar as a § 1446(b)[1] case, like this one, is concerned."). Nonetheless, the status of *Lowery* vis-à-vis Section 1446(b)(1) cases does not make its language any less persuasive to the Court in the above analysis.

[8]   The Defendants were right to have not removed from the initial Complaint for another reason, as well—counsel's respect for the requirements of Rule 11. As the Eleventh Circuit stated in *Lowery*:

> [A] removing defendant's counsel is bound by Rule 11 to file a notice of removal only when counsel can do so in good faith. We think it highly questionable whether a defendant could ever file a notice of removal on diversity grounds in a case such as the one before us—where the defendant, the party with the burden of proof, has only bare pleadings containing unspecified damages on which to base its notice—without seriously testing the limits of compliance with Rule 11. . . . In the absence of [an "other paper" that provides the grounds for removal under § 1446(b)(3)], the defendant's appraisal of the amount in controversy may be purely speculative and will ordinarily not provide grounds for his counsel to sign a notice of removal in good faith.

483 F.3d at 1213 n.63.

has become removable.

28 U.S.C. § 1446(b)(3). In other words, under this subsection, "a case becomes removable when three conditions are present: there must be (1) 'an amended pleading, motion, order or other paper,' which (2) the defendant must have received *from the plaintiff* (or from the court, if the document is an order), and from which (3) the defendant can 'first [. . .] ascertain' that federal jurisdiction exists." *Lowery*, 483 F.3d at 1213 n.63 (emphasis added) (quoting 28 U.S.C. § 1446(b)).[9] The documents received by the defendant "must contain an unambiguous statement that clearly establishes federal jurisdiction." *Id.* (citing, *e.g.*, *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2012) (holding that grounds for jurisdiction must be "unequivocally clear and certain")). Three potential "other papers" are present here: (1) Goldstein's later amendments to his initial Complaint; (2) answers Goldstein gave to interrogatories proffered by the Defendants; and (3) medical records the Defendants obtained by subpoena from third parties.

### a. *Amendments to Complaints*

The Court has already found that the allegations in the initial Complaint did not make the case immediately removable under Section 1446(b)(1). So it follows that neither of Goldstein's two amendments to the Complaint, which contain precisely the same language pertaining to damages as does the initial Complaint, suffices as an "other paper" to trigger the thirty-day removal clock under the stricter Section 1446(b)(3) standard. Neither amendment contains an unambiguous statement that clearly establishes federal jurisdiction. *See Lowery*, 483 F.3d at 1213 n.63.

### b. *Answers to Interrogatories*

Goldstein contends that the thirty-day clock should have started to run in September 2015

---

[9]     *Lowery* was decided under the version of Section 1446(b)—in effect from October 19, 1996, through November 8, 2011—that predated the amendments implemented by the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63 (codified in scattered sections of 28 U.S.C.). In that prior version of the statute, Section 1446(b) was not divided into further subsections, but was instead comprised of two paragraphs of text. *Lowery* deals with the "second paragraph" of that version of Section 1446(b), which would later become Section 1446(b)(3).

when he stated in his answers to the Defendants' interrogatories (supported by documentation) that he owed nearly $54,000 in medical bills. *See* Pl.'s Reply at 4-6. He claimed no other finite amount of damages, stating only that "I injured my neck and back. I had surgery on my back. Both injuries are permanent." Ross Decl. Ex. 5 ¶ 10.

The $54,000 figure Goldstein proffered is obviously below the $75,000 requirement, and these responses, even though they include the allegation that his injuries are permanent, simply do not provide the "unambiguous statement that clearly establishes federal jurisdiction" that *Lowery* requires. 483 F.3d at 1213 n.63; *see also Cameron v. Teeberry Logistics, LLC*, 920 F. Supp. 2d 1309 (N.D. Ga. 2013). In *Cameron*, the court determined that the plaintiff's discovery response fell short of the $75,000 threshold where she listed medical expenses of $62,432.45 and stated that she missed work from November 26, 2011, through May 31, 2012, but did not state the amount of lost wages she was seeking. The court concluded that, even though the defendants "might have assumed that her lost wages combined with her medical expenses would exceed $75,000, the [response] did not contain an unambiguous statement to that effect." *Id.* at 1313; *see also Williamson v. Home Depot USA, Inc.*, No. 07-61643, 2008 WL 2262044, at *2 (S.D. Fla. May 30, 2008) (stating that "it is insufficient to rely only on the severity of the damages claimed" in satisfying the amount in controversy requirement (citing *Beal v. La Quinta Inns, Inc.*, No. 06-0996, 2007 WL 1577826, at *2 (M.D. Fla. May 31, 2007)).

While the Court's finding may seem draconian, the rule in *Lowery* is exactingly construed, and a case like *Cameron* evinces the policy the rule embodies. If a plaintiff chooses not to provide the requisite clear and unambiguous statement at the earliest possible opportunity, he runs the risk of having his case removed at a later point in the litigation once the defendant ascertains that federal jurisdiction exists. *See Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 145 (2d Cir. 2014) ("[A] bright-line rule is preferable to the uncertainties faced by defendants in determining

removability. This approach also avoids 'expending copious time determining what a defendant should have known or have been able to ascertain at the time of the initial pleading [or other relevant filing].'" (quoting *Mumfrey v. CVS Pharm., Inc.*, 719 F.3d 392, 399 (5th Cir. 2013))). Accordingly, the Court concludes that Goldstein's interrogatory answers did not start the thirty-day clock under Section 1446(b)(3).

### c.    *Third-Party Medical Records*

Finally, the Court addresses the documents the Defendants contend makes their removal timely—the medical records they obtained from third parties. Statements in three of the Defendants' filings are relevant here. First, in the Amended Notice of Removal, the Defendants allege that they "have, during the course of discovery, obtained copies of Plaintiff's medical records, records which reflect that he has undergone series of medical treatments (including surgery) whose cost far exceed the jurisdictional limits of this Court." Am. Notice ¶ 11. Second, in their opposition to the motion to remand, the Defendants state that they "engaged in arduous third party discovery to obtain medical and other records that Mr. Goldstein has neglected to produce in support of his claim for damages," and that they "obtained documents and commenced evaluating the initial set of documents in April 2016 . . . . This process is when, for the first time [the Defendants] could reasonably and justifiably conclude that the amount in controversy could indeed exceed $75,000." Defs.' Opp'n at 6-7. And third, in a declaration attached to their opposition, Defendants' counsel states as follows:

> 27.    Mr. Goldstein's counsel advised that she did not have access to much of Mr. Goldstein's medical records, medical bills, or other information that would substantiate his claim against my clients.
>
> 28.    I was therefore forced to pursue the information from third parties via subpoena.
>
> 29.    Mr. Goldstein's counsel advised that she would not object to our subpoenas . . . if we agreed to provide counsel with a copy of whatever information we received.
>
> 30.    I commenced the process during the fall of 2015 and recently completed the process, or at least the initial round as some information is still forth-

14

coming, in April 2016.

> 31.     While we do not agree that my clients are liable for the medical treatments that Mr. Goldstein has had and may require in the future, we have reason to believe that his medical treatments are ongoing and could involve costs that may not necessarily be covered by insurance, which is why my clients sought removal on 2 May 2016.

Ross Decl. ¶¶ 27-31. The Defendants argue that the medical records that they obtained via third-party subpoena should be considered an "other paper" that triggered Section 1446(b)(3)'s thirty-day clock. Given that they filed a notice of removal within thirty days of receiving those records, they contend that removal was timely.

The Defendants are incorrect. Under the rule in *Lowery*, which concerned the prior version of Section 1446(b), a condition precedent to removal under the statute is that the "other paper" from which a defendant "first ascertains" that federal jurisdiction exists "***must*** [***have been***] ***received from the plaintiff***." 483 F.3d at 1213 n.63 (emphasis added); *see also Hummer v. Adams Homes of Nw. Fla., Inc.*, No. 13-1981, 2014 WL 897079, at *1 (M.D. Fla. Mar. 6, 2014) ("If removal is based on a document other than the plaintiff's initial pleading, that document must have been supplied by the plaintiff."); *Tiffin Motorhomes, Inc. v. Nat'l Interstate*, No. 13-1569, 2013 WL 5636690, at *4 (N.D. Ala. Oct. 16, 2013) (applying the *Lowery* analysis to the current version of Section 1446(b)(3) in determining that the defendant's removal was defective because the "other paper" that they alleged justified removal had not been received from the plaintiff).

The Defendants acknowledge throughout their filings in this case that they received no document from Goldstein that indicated that the case had become removable. Instead, they admit they reached their conclusion regarding removability as a result of their own investigation, based on documents received from third parties, not Goldstein. This is not permitted. Although the Defendants have unequivocally established that the amount in controversy in this litigation exceeds the jurisdictional threshold, it does not change the fact that, ***at the time they removed this case***, they

had not received any document or "other paper" *from Goldstein* that indicated that the case was removable. A party cannot come to its own conclusions on its own timetable when it comes to removal. *See Tiffin Motorhomes*, 2013 WL 5636690, at *4. Thus, the Court finds that the Defendants' removal was procedurally defective under 28 U.S.C. § 1446(b)(3).

*   *   *

That said, remand based on this procedural defect is improper. Reading Goldstein's motion liberally, he argues that removal was procedurally defective on three distinct grounds, each of which the Court has rejected: (1) the pre-suit demand letter, Civil Remedy Notice, and supplements put the Defendants on notice that the amount in controversy exceeded $75,000; (2) the Complaint and/or its amendments put the Defendants on notice that the amount in controversy exceeded $75,000; and (3) the answers to interrogatory responses put the Defendants on notice that the amount in controversy exceeded $75,000.[10] All three of these arguments contend that the Notice of Removal was filed too late; none address the defect the Court has found exists here—that the Notice of Removal never should have been filed, or was filed too soon, because it was based on medical records the Defendants obtained from third parties.

Under 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." Given that the Notice of Removal was filed on May 2, 2016, the deadline by which Goldstein must have raised this defect has long since passed. Courts facing this issue have made clear that "[i]f the removal suffers from procedural defects, the plaintiff is responsible for bringing those defects to the attention of the district court in a timely motion to remand. Generally, procedural defects not so raised are waived." *Polo v. Innoventions Int'l, LLC*,

---

[10]   A separate, non–procedural defect argument, regarding the Defendants' purported waiver of their right to remove, is addressed *infra*, Section III.B.

— F.3d —, 2016 WL 4394586, at *2 (9th Cir. Aug. 18, 2016) (citation omitted); *see also Samaan v. St. Joseph's Hosp.*, 670 F.3d 21, 28 (1st Cir. 2012) (holding that a plaintiff waived a ground supporting remand by failing to raise it; additionally, "[t]he fact that the plaintiff objected to removal on a different basis d[id] not avert this waiver"); *accord Masterson v. Apotex Corp.*, No. 07-61665, 2008 WL 2823944, at *3 (S.D. Fla. July 22, 2008) ("[B]ecause Plaintiffs in this case did not seek remand based upon the procedural defect of lack of unanimity until they filed their reply memorandum . . . more than thirty days after the removal of this case, the procedural defect is therefore waived . . . ."). Goldstein did not raise the procedural defect that, theoretically, could have justified remand, *i.e.*, that the "other paper" from which the Defendants claim they first ascertained that federal jurisdiction existed came from a party other than him. But by failing to raise that defect, he has waived it. *Polo*, 2016 WL 4394586, at *2; *see also Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 198 (4th Cir. 2008) (explaining that 28 U.S.C. § 1447(c) "effectively assigns *to the parties* the responsibility of policing non-jurisdictional questions regarding the propriety of removal, permitting them to assert a procedural defect or to waive the defect if they choose to remain in the federal forum." (emphasis added)).**[11]**

## B.  *Waiver of the Right to Remove*

Goldstein's final argument is that the Defendants waived their right to remove by litigating in state court for nearly a year prior to filing the notice of removal. *See* Pl.'s Mot. at 3-5. The Defendants filed several documents in the state court prior to filing the Notice of Removal, including an answer and affirmative defenses, responses to requests for admission and production, answers to interrogatories, interrogatories to Goldstein, and a notice to set the cause for trial. *See* Pl.'s Reply at 3. Goldstein, relying especially on the Defendants' notice to set the cause for trial,

---

**[11]**  Moreover, even though the Court has identified this procedural defect, it is not permitted to rely on it to justify remand *sua sponte*. *See Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1237 n.1 (11th Cir. 2008); *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough LLP*, 365 F.3d 1244, 1245 (11th Cir. 2004) (per curiam).

contends that it is "vital" for this Court to consider "whether the actions taken by the Defendants in the state court were for the purpose of preserving the status quo," or whether they "manifest an intent to litigate on the merits in state court." *Id.* at 2 (quoting *Fain v. Biltmore Sec., Inc.*, 166 F.R.D. 39, 40 (M.D. Ala. 1996)).

"[W]aiver is the 'intentional relinquishment or abandonment of a ***known right***.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (emphasis added) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Goldstein is technically correct that "[a] state court defendant may lose or waive the right to remove a case to federal court by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court." *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough LLP*, 365 F.3d 1244, 1246 (11th Cir. 2004) (per curiam) (citation and internal quotation marks omitted). However, waiver can be effectuated only "by acts taken in the state court, ***subsequent to the creation of the right to remove***." *Fain*, 166 F.R.D. 39 at 40 (emphasis added); *see also, e.g.*, *Banks v. Hous. Auth.*, 32 F. Supp. 3d 1296, 1297-98 (N.D. Ga. 2014); *Hernandez-Lopez v. Puerto Rico*, 30 F. Supp. 2d 205, 209 (D.P.R. 1998). "The waiver inquiry is not how much the case was litigated prior to removal; it is instead what did the defendant do after the case was ***removable*** that is fundamentally inconsistent with exercising its right of removal." *Hess v. Bonneville Billing & Collections, Inc.*, No. 15-5158, 2015 WL 3569230, at *1 (W.D. Wash. June 5, 2015).

From the Court's conclusion on the timeliness issues follows the equally clear conclusion that a right to remove ***was never actually created*** in this case. None of the documents the Defendants received from Goldstein established that the case was removable because they did not evince that the value of the case exceeded the amount-in-controversy requirement, and the documents the Defendants obtained that ***did*** establish that the amount in controversy was exceeded were not obtained from Goldstein. Logically, then, the documents filed by the Defendants in state court,

18

which Goldstein claims signify waiver, are instead representations of the Defendants undertaking their responsibility to defend what they believed (and what this Court today confirms) was a non-removable case.

Put simply, if the right to remove is not "known," *Olano*, 507 U.S. at 733, it cannot be waived. The Court therefore concludes that the Defendants did not (and, indeed, could not) waive their right to remove, because that right never existed in the first place.

## IV.  CONCLUSION

Because the Court can exercise subject matter jurisdiction over this action, because the Plaintiff has waived the sole procedural defect which could have justified remand, and because the Defendants have not waived their right to remove, remand is improper. Accordingly, it is

**ORDERED AND ADJUDGED** that the Plaintiff's Motion to Remand [ECF No. 10] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21st day of September, 2016.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE